IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCES LIGNORE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| HOSPITAL UNIVERSITY OF | : | |
| PENNSYLVANIA, | : | |
| Defendant. | : | NO. 04-5735 |

## MEMORANDUM AND ORDER

Gene E.K. Pratter, J.                                                                                          June 27, 2006

<u>Pro</u> <u>se</u> Plaintiff Frances Jean Lignore seeks redress for incidents that allegedly occurred while she was employed by the Hospital of the University of Pennsylvania ("HUP"). Based on Ms. Lignore's sparse complaint,[1] testimony during her deposition, and portions of the Philadelphia Commission on Human Relations ("PCHR") record, HUP identified three state law claims made by Ms. Lignore and moves for dismissal of each of those claims in the motion for partial summary judgment that is now before the Court, along with Ms. Lignore's response.[2]

The three state law claims addressed in the HUP motion derive from Ms. Lignore's allegations of HUP's denial of overtime wages, unlawful retaliation, and sexual discrimination. While Ms. Lignore has labored to describe offensive, inappropriate, and unprofessional

---

[1] While neither party has challenged this Court's subject matter jurisdiction, the Court notes that because Ms. Lignore's claims involving gender discrimination and overtime compensation can be interpreted to involve questions of federal law under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> and the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 <u>et</u> <u>seq.</u>, this Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as well as supplemental jurisdiction over her state claims pursuant to 28 U.S.C. § 1367.

[2] HUP seeks only partial summary judgment at this time. Thus, the Court does not address Ms. Lignore's allegations concerning federal claims.

behavior, even taking the allegations of the conduct she describes as true,[3] as a matter of law HUP's motion must be granted.

## I.     FACTUAL BACKGROUND

The Court has reviewed the evidence provided by the parties. HUP's evidence primarily consists of a deposition of the Plaintiff, portions of the PCHR record, portions of the Equal Employment Opportunity Commission (EEOC) record, various letters concerning the claims in this case and the marriage certificate of Ms. Lignore's alleged antagonist, Ms. Bogacki.[4] Ms. Lignore attached to her bare-bones letter response opposing summary judgment a performance review, letters of recommendation ostensibly written by HUP employees, as well as several other letters and notes which are of little or no relevance to this case. Ms. Lignore also took a deposition of Ms. Robin Hartigan, a current HUP employee.[5]

---

[3]   HUP does not concede that the alleged actions actually occurred.

[4]   The Court notes that in light of Ms. Lignore's pro se status it has declined to consider HUP's contention based on the PCHR and EEOC file as well as references in the employment termination letter that Ms. Lignore was fired for allegedly making threatening comments about Ms. Bogacki. Admissibility of this evidence is at least questionable, see, e.g., Cambra v. The Restaurant School, No. 04-2688, 2005 U.S. Dist. LEXIS 26231 (E.D. Pa. Nov. 1, 2005), and a plaintiff represented by counsel may well have sought to strike at least some of this evidence from the record at the summary judgment stage. The fact that one litigant is proceeding without counsel behooves opposing counsel to be especially reserved in handling the record, lest anyone get the impression that the pro se status operated to fundamentally change the outcome of the case.

[5]   This case reflects the many challenges that civil litigation conducted by a pro se litigant - - especially litigation concerning emotional personal experiences - - present to the litigant herself or himself, to the opposing party, and to the Court. Numerous efforts to facilitate Plaintiff's retention of counsel proved unsuccessful, as have efforts to persuade Plaintiff to accept and follow the obligation to employ more conventional procedures for conducting the litigation. Her use of a letter asserting the justness of her claims but without citation to pleadings or admissible evidence to oppose the subject motion is an example. Nonetheless, the Court has endeavored to extend to Plaintiff every arguably available indulgence so that her pro se status will not be a debilitating impediment to a full and fair evaluation of her rights and obligations. Thus, the Court did not impose upon Ms. Lignore the obligations imposed upon counsel with respect to the

Ms. Lignore began employment with the Trustees of the University of Pennsylvania at the Hospital, on June 23, 1999. She worked as an Administrative Assistant in HUP's Department of Neurosurgery. Mary Ellen Bogacki was Ms. Lignore's supervisor at HUP. Ms. Lignore's employment was terminated effective July 1, 2002. Following her termination, she filed a charge with the PCHR/EEOC on August 28, 2002. The PCHR conducted an investigation which the EEOC subsequently reviewed. In the spring of 2003 Ms. Lignore signed a Release settling any claims against HUP for overtime wages. By the fall of 2004, the PCHR had completed its investigation and the EEOC had concluded its review of the PCHR findings. Ms. Lignore then contacted her Congressmen who in turn inquired with the EEOC about the claim. Ms. Lignore next filed her complaint in this Court on December 13, 2004.

As far as is pertinent to the pending motion, Ms. Lignore alleges in her complaint (1) that Ms. Bogacki slid her finger under Ms. Lignore's right shoulder bra strap and insisted that Ms. Lignore step into her office so Ms. Bogacki could hide the strap by bobby-pinning it to her dress; (2) that Ms. Bogacki elbowed Plaintiff in the chest while leering at her; (3) that Ms. Bogacki repeatedly asked Plaintiff questions about her personal life and asked whether her 13 year old daughter dated and commented that Plaintiff would be lucky if her daughter were gay; (4) that Ms. Bogacki asked Plaintiff to go to a gay bar; and (5) that she asked Ms. Lignore if she was homophobic.[6] Similar allegations arise elsewhere in the record. In her letter response to HUP's

---

proper form for opposing summary judgment motions. However, leniency extended to pro se litigants is not limitless, and neither the Court nor the opponent is obliged to tailor claims from whole cloth for a pro se plaintiff or to cast aside all procedural rules or substantive caselaw.

[6] The dates of these alleged occurrences is difficult to glean from the record. The complaint itself includes the date "5/02" at the beginning of the paragraph describing the bra strap incident. Details of the allegations that Ms. Lignore attached to the complaint state that the comments made about Ms. Lignore's daughter also occurred in May, 2002. The same attachments indicate

3

motion, as well as in her deposition, Ms. Lignore also claimed that Ms. Bogacki told her that "all thirteen year old girls consider sucking dick, kissing" and that "[m]aybe I will be lucky and my daughter will be a lesbian." At her deposition, Ms. Lignore further asserted that she was discriminated against because she was heterosexual, and she "wasn't playing [Ms. Bogacki's] game." Ms. Lignore stated that Ms. Bogacki "just had it out for me because she knew that I - I totally made it clear that I did not want to be bothered with her." The PCHR file contains the same allegations as well as accusations of Ms. Bocagcki "[s]tanding very close to the Complainant and brushing against her buttocks, hips or breasts." The harassment questionnaire in the PCHR file filled out by Ms. Lignore included the allegations that Ms. Bogacki was "constantly touching my arm or accidentally brushing up against my body."

    Ms. Lignore also testified at her deposition that Ms. Bogacki "was deliberately cheating me out of my overtime" by not allowing her to take lunch. Answering a question on her harassment questionnaire regarding whether her employment status was in any way threatened for not going along with the harassment, Ms. Lignore referred to the lack of overtime pay and Ms. Bogacki's harassing her about a doctor's note after Ms. Lignore claimed sick leave while Ms. Bogacki reportedly insisted that she take family medical leave instead of sick time. The PCHR file also describes Ms. Lignore's charge to the Commission as including accusations of retaliation by Ms. Bogacki for Ms. Lignore's attempt to avoid further alleged harassment. The allegations of retaliatory actions include an increased work load, having to deal with more

---

that the question about being homophobic occurred in June, 1999 and that harassment about taking sick leave occurred in June, 2001. However, the information in the PCHR questionnaire indicates that the bra strap incident took place in June, 2001 and the PCHR "Statement of Particulars" simply states that the alleged sexual harassment began in 1999. Predictably, HUP argues that several of these allegations are time barred. See note 15, infra.

difficult patients, Ms. Bogacki "trashing" the Plaintiff's desk, Ms. Bogacki giving Ms. Lignore a late evaluation, and Ms. Bogacki calling Ms. Lignore to attend long meetings just before quitting time.

In Ms. Lignore's letter response to HUP's motion she again explained her allegations, but she failed to reference any legal authority at all, or respond to HUP's motion in any substantive way. Ms. Lignore had, however, deposed Ms. Robin Hartigan, a HUP employee, who claims also to have also filed a sexual harassment complaint against Ms. Bogacki. Ms. Hartigan testified that Ms. Bogacki made sexual remarks to her that she found extremely offensive and that Ms. Bogacki touched her shoulders at times and touched the tags on her clothing, but "never touched [her] in any sexual areas of [her] body." Additionally, Ms. Hartigan stated that Ms. Bogacki would continually stare at her breasts and that she felt that after she complained about the offensive behavior, "there [was] retaliation going on," although she did not specify what type of retaliation occurred.[7] Ms. Lignore presented no other factual response to the Motion, and submitted no legal arguments, leaving the Court with essentially only Plaintiff's pleading, her recitation of her experiences and her view that she has a meritorious claim.

---

[7] The alleged remarks included Ms. Bogacki asking Ms. Hartigan if she "spread them for every guy" she goes out with, and upon observing a doctor enter his office in a "grumpy" mood, Ms. Bogacki allegedly suggested that Ms. Hartigan "go take care of him" and proceeded to gyrate her hips. Although Ms. Lignore may believe the Hartigan episodes have some role to play in this litigation and the reference to them in this Memorandum is reluctantly included so that Ms. Lignore will not erroneously conclude that the Court was unaware of her discovery activities, this Hartigan deposition and a letter attached to Ms. Lignore's response also from Ms. Hartigan, are not relevant to this case and present other evidentiary failings. Ms. Hartigan began working at HUP in February, 2003, well after Ms. Lignore had already been dismissed. Ms. Lignore's attempted reliance on this "evidence" is, however, an example of this pro se litigant's insufficient understanding of legal requirements. Presumably expecting the Court to recognize the inappropriateness of the Hartigan "evidence," HUP declined to address this deposition testimony in its motion.

## II.     DISCUSSION

### A.     Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is 'material' if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

"Due to an understandable difference in legal sophistication, a complaint drafted by a pro se litigant must be held to a less exacting standard than a complaint drafted by trained counsel." Lopez v. Brown, 2005 U.S. Dist. LEXIS 26715, *6 (D.N.J. Nov. 4, 2005) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  However, "while pro se complaints are entitled to liberal construction, the plaintiff must still set forth facts sufficient to survive summary judgment." Ezeiruaku v. United States, 2000 U.S. Dist. LEXIS 17046, *10 (E.D. Pa. Nov. 29, 2000) (citing Shabazz v. Odum, 591 F.Supp. 1513 (M.D. Pa. 1984)).

### B.   Overtime Wages

HUP states in its motion that Ms. Lignore's first state claim is that "she was denied overtime wages while employed by Defendant The Trustees of the University of Pennsylvania." Based on unchallenged documentary evidence and supporting caselaw, HUP has shown that there is no genuine dispute concerning whether Ms. Lignore has settled all disputes concerning overtime wages.

HUP contends that Ms. Lignore's claim concerning overtime wages was settled when she received $1,329.86 of allegedly unpaid overtime wages and Ms. Lignore agreed to release other related claims in a document dated May 19, 2003.  The Release letter itself, which Ms. Lignore admits she signed, states:

> Your return to me of the signed duplicate of this letter will mean that in return for $1329.86 (gross amount) you [Ms. Lignore] will voluntarily agree to give up any claims you might have against the University for overtime pay, including but not limited to, any claims under the Pennsylvania Wage and Hour Law, the Pennsylvania Wage Payment and Collection Law, and the Fair Labor Standards Act.  Signing this letter also means that you acknowledge that apart from the overtime or other wages which we have agreed to pay you, there is no additional overtime or other wages that you worked without appropriate compensation.

HUP correctly points out that in Pennsylvania "[a] signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake." Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 892 (3d Cir. 1975) (citing Kent v. Fair, 140 A.2d 445 (Pa.1958)). "The natural and ordinary meaning of the language of the release demonstrates the intention of the parties and will prevail unless one of the parties unequivocally proves that the release is invalid." Reed v. SmithKline Beckman Corp., 569 F. Supp. 672, 674 (E.D. Pa. 1983) (citing Sears, Roebuck & Co. v. Jardel Co., 421 F.2d 1048, 1051 (3d Cir.1970)).

Therefore, as HUP has argued, if Ms. Lignore is held to the Release she cannot "subsequently seek both the benefit of the settlement and the opportunity to continue to press the claims [s]he agreed to settle." Melendez v. Horizon Cellular Telephone Co., 841 F. Supp. 687, 691 (E.D. Pa. 1994) (quoting Kirby v. Dole, 736 F.2d 661, 664 (11th Cir. 1984)). Courts have rejected the idea that "an aggrieved employee who freely settles his or her unliquidated demand with the employer . . . may reciprocate by suing the same defendant at a later date on the same cause of action, merely because the employee grows dissatisfied with the payment for which he or she settled." Kirby, 736 F.2d at 664 (quoting Strozier v. General Motors Corp., 635 F.2d 424, 426 (5th Cir. 1981)).

Even though her response to this aspect of HUP's motion is interpreted generously, Ms. Lignore failed to address this argument in any substantive fashion. Her response only re-states the allegations that "[Ms. Bogacki] falsified my timesheets, cheating me out of overtime pay." At her deposition Ms. Lignore testified that she still had not been paid for all of her missed lunch periods (which HUP has reasonably interpreted as an overtime claim here) because Ms. Bogacki would not allow her to write "no lunch" on her time sheets. However, inasmuch as Ms. Lignore

has failed to present any evidence at all to cast doubt on the validity of the Release, HUP's motion will be granted concerning Ms. Lignore's claim for overtime wages.

### C.    Sexual Harassment[8]

#### 1.    Retaliation

HUP states in its motion that Ms. Lignore's second state claim "alleges that the University's decision to discharge her . . . in July 2002 was unlawful retaliation." HUP has accurately concluded based on the record and applicable caselaw that "there can be no illegal retaliation here because Plaintiff only raised issues of sexual discrimination and filed with the PCHR/EEOC **after** the University discharged her . . . . "

As HUP has argued, "to advance a prima facie case of retaliation, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action *after or contemporaneous with* the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000) (emphasis added).

HUP also points out that in Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997), a case involving allegations of sexual harassment, the court stated that the facts showed that

---

[8]    In its motion, HUP referred to federal discrimination case law based on the correct assessment that the state and local statutes and ordinances are governed by the same standards as the federal law.  Joseph v. Continental Airlines, 126 F. Supp. 2d 373, 376 (E.D. Pa. 2000); see also Lepore v. LanVision Sys., 113 Fed. Appx. 449, 452 (3d Cir. Oct. 19, 2004) (citing Gomez v. Allegheny Health Servs., 71 F.3d 1079, 1083-84 (3d Cir. 1995) ("Claims arising under the [Pennsylvania Human Relations Act, 43 Pa Const. Stat. § 951 et seq.] are governed by the same legal standard as that applied to Title VII [of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.].")).

9

"much of what [Plaintiff] characterizes as retaliation for her EEOC complaint is in fact alleged to have occurred before she filed the complaint." Id. at 1301. Accordingly, the court of appeals affirmed the district court's grant of judgment as a matter of law on the retaliation claims. Id. at 1304.

Here, Ms. Lignore stated in her deposition that she never reported any of the alleged discriminatory conduct to the EEOC or any state or local agency or official until after she was discharged. She was fired on July 1, 2002, and she filed her charge with the PCHR on August 28, 2002. Again, even giving her response to HUP's motion the most lax interpretation, Ms. Lignore has completely failed to mount any substantive counter argument. Concerning retaliation, Ms. Lignore stated in her response to the HUP motion that "[Ms. Bogacki] finally retaliated and had her Business Administrator, Peter Dolhancryk fire me after I returned from my vacation." She also explained in her deposition that she thought it would be "silly" to go to human resources because Ms. Bogacki was talking to an individual in human resources "about how to terminate me." These allegations notwithstanding, HUP has correctly identified that all of the alleged discrimination and allegedly retaliatory events happened before Ms. Lignore verbalized, much less filed, her complaint. Therefore, Ms. Lignore cannot establish a causal connection between her charges and the allegedly retaliatory conduct. Thus, the Court will dismiss all state claims of retaliation stated in any of Plaintiff's pleadings.

### 2.     Quid Pro Quo Sexual Harassment

In addressing the sexual harassment claim, HUP also argues that additional allegations found in an attachment to the complaint[9] concerning actions taken by Ms. Bogacki should be

---

9     Again indicative of Ms. Lignore's lack of legal counsel, she attached to her complaint correspondence she sent to a lawyer, apparently as part of an effort to secure counsel for this case. While the letter is arguably a privileged communication, HUP has made reference to it at

10

dismissed because they are not based on Ms. Lignore's gender, and because Plaintiff has failed to allege that the male staff was treated any differently.  The PCHR record[10] also includes similar allegations to these claims referenced by HUP, but the PCHR record describes them as "retaliation."  These allegations termed as retaliation in the PCHR record include the deprivation of overtime pay, harassment for taking sick leave, an increased work load, having to deal with more difficult patients, "trashing" the Plaintiff's desk, giving Ms. Lignore a late evaluation, and calling Ms. Lignore to long meetings just before quitting time.  Furthermore, Ms. Lignore alleges in her response to HUP's motion, and without any evidentiary support, that Ms. Bogacki "filed a false police report that I would kill her or have someone kill her."  The record contains no copy of any such report - - false or otherwise.  For the present purposes the Court notes that such allegations of harassment conceivably could constitute a "quid pro quo" sexual harassment claim, and so the Court will discuss these allegations in that context.

     A quid pro quo sexual harassment claim requires evidence of unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature and evidence that (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment or (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.  Iyer v. Everson, 382 F. Supp. 2d 749, 758 (E.D. Pa. 2005) (citing Bonenberger v. Plymouth Township, 132 F.3d 20, 27 (3d Cir. 1997)).

---

least insofar as it helps to comprehend the possible claims Ms. Lignore believes she has.  The Court will permit consideration of this document only as an aid in that effort.

[10]    See note 4, supra.

Thus, Ms. Lignore's various allegations of "retaliation" could be an attempt to articulate a claim based on her perception that her rejection of Ms. Bogacki's supposed advances led to these events. However, because the record is devoid of evidence other than Ms. Lignore's conjecture that rejection of Ms. Bogacki's supposed advances affected employment decisions, her sexual harassment claim fails as a quid pro quo claim as well. Thus, the Court dismisses all state law claims as may be quid pro quo sexual harassment.

### 3. Hostile Work Environment Sexual Harassment

HUP states in its motion that Ms. Lignore's third state claim is "that she suffered sexual discrimination in the form of same-sex harassment from her former married female supervisor." HUP has successfully established that the record is devoid of evidence that Ms. Lignore was discriminated against because of her sex, but even if it could be established that the alleged actions occurred because of Ms. Lignore's gender, HUP has accurately identified that the allegations of sexual harassment, if taken as true, do not amount to such severe or pervasive conduct as to be actionable.

As HUP has recognized, employment discrimination claims under Pennsylvania law follow federal standards, and to establish unlawful discrimination due to harassment under Title VII a plaintiff must show that: (1) she suffered intentional discrimination because of her race or sex; (2) the discrimination was severe or pervasive;[11] (3) the discrimination detrimentally affected the plaintiff; (4) a reasonable person would have been detrimentally affected by such

---

[11] Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999), uses the phrase 'pervasive and regular', but as the Third Circuit Court of Appeals has recently explained, "the Supreme Court's standard is 'severe or pervasive.'" Jensen v. Potter, 435 F.3d 444, 449 at n. 3 (3d Cir. 2006) (citing Pa. State Police v. Suders, 542 U.S. 129, 133 (2004).

discrimination; and (5) the existence of respondeat superior liability.  Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999).

To determine whether a work environment is sufficiently hostile or abusive such that it constitutes intentional sex discrimination, courts look at the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (citation omitted).

As an initial matter, the Supreme Court has held that "nothing in Title VII necessarily bars a claim of discrimination "because of . . . sex" merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 79 (1998).  Here the impediment is not that the conduct was undertaken by a person of the same gender as the Plaintiff, but rather the motion is meritorious because Ms. Lignore failed to present evidence - - or a dispute over evidence - - that would show that she suffered any discrimination because of her sex.  Despite repeated opportunities to do so, she has not offered any evidence other than her own conclusory interpretive allegations that she was sexually harassed and that Ms. Bogacki sexually harassed other women.[12]  As HUP highlights, Ms. Lignore has also never alleged that the male staff was

---

[12]   Likewise, Ms. Lignore has failed to offer any evidence other than conjecture in support of her allegations that could be interpreted as claiming she was discriminated against on the basis of her sexual orientation.  Of course, Title VII does not apply to sexual orientation discrimination. Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001).  But, as HUP points out, such discrimination is prohibited by the Fair Practices Ordinance of the Philadelphia Code. See Devlin v. City of Philadelphia, 580 Pa. 564, 586 (Pa. 2004).  Thus, HUP additionally argues that claims of discrimination based on sexual orientation are also barred for failure to exhaust administrative remedies because such claims were not made in Ms. Lignore's administrative filings.  As with every legal argument put forward in HUP's motion, Ms. Lignore has again

treated any differently than she was. Ms. Lignore also states candidly, that "I couldn't figure it out because I knew Mary Ellen was married." See Lee v. Comhar, No. 05-1781, 2006 U.S. Dist. LEXIS 30618 at *9 (E.D. Pa. May 18, 2006) (Plaintiff failed to prove hostile work environment sexual harassment allegations involved discrimination because of his sex when he offered only vague allegations of a co-worker's homosexuality, and no evidence that he was treated differently than other employees on account of his gender). HUP correctly points out that "[v]erbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender (or membership in other protected groups)." Koschoff v. Henderson, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000) (citations omitted). Ms. Lignore's allegations are simply insufficient to constitute a gender-based harassment claim.

Furthermore, these incidents of purportedly harassing behavior directed against Ms. Lignore which Ms. Lignore (but no other witness) repeats at each opportunity but does not document otherwise, are not sufficiently severe or pervasive, an element that is also required in order for a plaintiff to state a claim under Title VII. Controlling precedent makes clear that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citation omitted). While Ms. Lignore may have viewed the various alleged comments and actions as offensive or unprofessional, individually or collectively they are insufficient to create a factual issue as to whether Plaintiff was subject to a hostile work environment based on sexual harassment.

---

failed to respond to this point, but the Court need not address this argument due to the conclusion that Ms. Lignore has failed to offer any evidence of discrimination based on sexual orientation.

Focusing on the allegations of physical contact, while the alleged elbowing, "brushing up"[13] and slipping of Ms. Bogacki's finger under Ms. Lignore's bra strap could conceivably amount to annoying, overly familiar or informal, or even offensive behavior, "[m]ore intimate or more crude physical acts--a hand on the thigh, a kiss on the lips, a pinch of the buttocks--may be considered insufficiently abusive to be described as "severe" when they occur in isolation." Hostetler v. Quality Dining, Inc., 218 F.3d 798, 808 (7th Cir. 2000) (citations omitted). For example, in Burnett v. Tyco Corp., 203 F.3d 980, 981-82 (6th Cir. 2000), the court held that the plaintiff failed to show harassment sufficiently severe as to constitute a hostile work environment when she alleged that the personnel manager for her employer placed a pack of cigarettes under her bra strap, remarked she "lost her cherry," and after she wore a Christmas sweater that read "Deck the Malls" the manager stated "dick the malls, dick the malls, I almost got aroused." Noting the severity of the cigarette pack incident that might constitute a battery, the court held that "under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment." Id. at 985.[14]

---

[13] While the PCHR "Statement of Particulars" describes Ms. Lignore's allegations against Ms. Bogacki to include "[s]tanding very close to plaintiff and brushing against her buttocks, hips or breasts," Ms. Lignore, in her PCHR harassment questionnaire described Ms. Bogacki's actions as "accidentally brushing up against my body."

[14] Likewise, in the context of alleged same-sex sexual harassment, the court in Morgan v. Massachusetts General Hosp., 901 F.2d 186, 192-193 (1st Cir. 1990), held that conduct was not severe or pervasive where a gay co-worker engaged in a bumping incident, stood next to plaintiff in the restroom and "peeped" at his "privates," "hung around him a lot," and asked the plaintiff to dance at a Christmas party.

Although Ms. Lignore's allegations, assumed to be true for present purposes, would amount to inappropriate and annoying conduct, under the totality of the circumstances, Ms. Bogacki's alleged actions were not so pervasive or severe so as to alter a term of Ms. Lignore's employment.  As HUP has identified, the alleged five actions stated in Ms. Lignore's complaint span a period of three years of full time employment.  HUP has correctly concluded that such a rate of occurrence is insufficient to be considered "pervasive" and likewise not sufficiently severe to state a claim under Title VII.  See, e.g., Bowman v. Shawnee State Univ., 220 F.3d 456 (6th Cir. 2000) (affirming grant of summary judgment; incidents where female superior rubbed male employee's shoulders, grabbed employee's buttocks, and placed finger on employee's chest were not sufficiently severe or pervasive to create a hostile work environment); Adusumilli v. City of Chicago, 164 F.3d 353 (7th Cir.1998) (affirming grant of summary judgment; incidents where co-employees teased plaintiff, made sexual jokes aimed at her, repeatedly stared at her chest, and on four occasions made unwelcome contact with her arm, fingers, and buttocks were not sufficiently severe or pervasive to create a hostile work environment); Bacone v. Phila. Hous. Auth., No. 01-419, 2003 U.S. Dist. LEXIS 8818, *14 (E.D. Pa. May 7, 2003) ("one incident of offensive touching and one incident where [co-worker] briefly exposed herself to [Plaintiff] were reprehensible, they were not severe so as to alter a term of his employment."); Saidu-Kamara v. Parkway Corp., 155 F. Supp. 2d 436, 438 (E.D. Pa. 2001) (granting summary judgment where defendant asked plaintiff out on dates on several occasions, directed sexual innuendo toward her, and, at least one time, touched her breasts and buttocks); Bonora v. UGI Utilities, Inc., No. 99-5539, 2000 U.S. Dist. LEXIS 15172, *11 (E.D. Pa. Oct. 18, 2000) (granting summary judgment where defendant touched plaintiff's waist on

one occasion; brushed his buttocks against hers on two to four occasions; and looked at her chest during a meeting on one occasion).

Employment discrimination law does not provide a remedy for every unsavory interaction occurring in the course of one's employment. Therefore, while Ms. Lignore may not be alone in seeing the reported conduct as distasteful, vulgar, and unprofessional, the behavior alleged by Ms. Lignore on the part of Ms. Bogacki does not amount to hostile work environment sexual harassment.[15] Therefore, the Court dismisses all state law claims related to hostile work environment sexual harassment.

---

[15] HUP also claims that Ms. Lignore's complaint includes allegations of actions that occurred in June of 1999, and that because her PCHR charge was not filed until over 300 days later on August 28, 2002, those particular claims cannot be the basis of the her claim. See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 109-110 (2002). While Ms. Lignore does indicate in her harassment questionnaire and her attachment to the complaint, that certain alleged actions took place more than 300 days prior to filing her PCHR claim, her complaint could be generously interpreted as identifying events that took place over a more ambiguous time period. See note 6, supra. Notwithstanding such latitude concerning the issue of timeliness, as stated above, even when taken as true and not time barred, Ms. Lignore's allegations fail as a matter of law.

## III.     CONCLUSION

For the reasons discussed above, the Court grants the Defendant's motion for partial summary judgment.  An appropriate Order consistent with this Memorandum follows.

                                                                BY THE COURT:


                                                                S/Gene E.K. Pratter

                                                                GENE E. K. PRATTER
                                                                UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCES LIGNORE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| HOSPITAL UNIVERSITY OF | : | |
| PENNSYLVANIA, | : | |
| Defendant. | : | NO. 04-5735 |

## ORDER

Gene E.K. Pratter, J.                                                                            June 27, 2006

AND NOW, this 27th day of June, 2006, upon consideration of Defendant's Motion for Partial Summary Judgment (Docket No. 17), and the response thereto (Docket No. 18), it is hereby ORDERED that Defendant's Motion is GRANTED.

IT IS FURTHER ORDERED that judgment is entered in the Defendant's favor and against Plaintiff on all state law claims involving payment of overtime wages, unlawful retaliation, and sexual harassment.

The parties shall submit to the Court, in writing, their respective assessment as to what claims remain to be resolved in this case and the date by which they will be ready to try this case.

BY THE COURT:

S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE