**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANCES LIGNORE, | : | CIVIL ACTION |
|        **Plaintiff** | : | |
| | : | |
| | : | |
|    v. | : | |
| | : | |
| HOSPITAL OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA, | : | |
|        **Defendant.** | : | NO. 04-5735 |

<u>MEMORANDUM AND ORDER</u>

GENE E.K. PRATTER, J.                                                     APRIL 30, 2007

<u>Pro se</u> Plaintiff Frances Jean Lignore has sued the Hospital of the University of

Pennsylvania ("HUP") under state and federal law for denial of overtime wages, unlawful

retaliation and sexual discrimination.  On June 27, 2006, the Court granted partial summary

judgment in favor of HUP on Ms. Lignore's state-law claims, and subsequently granted HUP

leave to file a second motion for summary judgment of Plaintiff's remaining federal claims.

HUP has now pursued such a motion, and for the reasons that follow, the Court will grant

summary judgment on Ms. Lignore's two federal claims, namely those arising under the Fair

Labor Standards Act of 1938, 29 U.S.C. § 201, <u>et</u> <u>seq.</u> ("FLSA") and Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").

## I.    FACTUAL BACKGROUND[1]

Ms. Lignore was employed as an administrative assistant in HUP's Department of

Neurosurgery between June 23, 1999 and July 1, 2002.  She has complained that her supervisor,

---

[1]A full recitation of the factual background of this litigation is included in the Court's
June 27, 2006 Memorandum and Order.  <u>Lignore v. Hosp. of the U.of Pa.,</u> 2006 WL 1804571
(E.D. Pa. Jun. 28, 2006).

Mary Ellen Bogacki, sexually harassed her and retaliated against her for failing to concede to her sexual advances.  As part of the alleged retaliation, Ms. Lignore claims that Ms. Bogacki deprived her of overtime wages by refusing to either allow her to take lunch breaks or to compensate her for working through the breaks.

The Court previously addressed the evidence concerning these assertions at length in the context of Pennsylvania law.  Claims of sexual harassment and retaliation under the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951 et seq., are analyzed according to the legal framework applied to federal claims of the same prohibited activities asserted under Title VII. Lignore, 2006 WL 1804571, at *4 (citing Joseph v. Continental Airlines, 126 F. Supp. 2d 373, 376 (E.D. Pa. 2000) (regarding claims arising under local ordinances); Lepore v. Lanvision Sys., Inc., 113 F. App'x 449, 452, (3d Cir. 2004) ("[c]laims arising under the PHRA are governed by the same legal standard as that applied to Title VII"); Gomez v. Allegheny Health Servs., 71 F.3d 1079, 1083-1084 (3d Cir. 1995) (same)).

In its earlier evaluation of Ms. Lignore's claims and HUP's legal position, the Court concluded that based on the evidence, Ms. Lignore could not establish a state-law claim of quid pro quo harassment because she had submitted no evidence that her rejection of her supervisor's advances affected HUP's employment decisions.  The Court also found that Ms. Lignore could not establish a claim of hostile work environment sexual harassment, because the conduct she alleged was not sufficiently severe or pervasive to prevail on a claim of discrimination under this theory.  Further, the Court held that Ms. Lignore had failed to advance a prima facie case of retaliation because HUP took no adverse employment action prior to Ms. Lignore engaging in the protected activity of filing a charge with the Equal Employment Opportunity Commission.

Lignore, 2006 WL 1804591, at *5-8.

The Court applies the same legal standard to her claims arising under Title VII as it did to her PHRA claims, and as such, continues to afford Ms. Lignore's pleadings the liberal construction and less exacting scrutiny frequently enjoyed by pro se parties. Lopez v. Brown, 2005 U.S. Dist. LEXIS 26715, at *6 (D.N.J. Nov. 4, 2005) (citing Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed.2d 652 (1972)). However, while mindful that "pro se complaints are entitled to liberal construction," the Court also recognizes that "the plaintiff must still set forth facts sufficient to survive summary judgment." Ezeiruaku v. United States, 2000 U.S. Dist. LEXIS 17046, at *10 (E.D. Pa. Nov. 29, 2000) (citing Shabazz v. Odum, 591 F. Supp. 1513 (M.D. Pa. 1984)).[2]

Because the facts, legal standard, and framework of analysis of Ms. Lignore's claims of sexual harassment and retaliation are the same under federal and state law, the Court will not recite its previous analysis, and will now enter summary judgment on her Title VII claims.

Turning next to Ms. Lignore's FLSA claim, the Court will briefly recount the relevant facts, because the analysis of her wage claim under federal law is not wholly synchronous with that under state law. On December 17, 2002, Ms. Lignore filed a wage complaint with the Pennsylvania Bureau of Labor Law Compliance[3] (the "Bureau") relating to overtime wages she

---

[2]Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As required by Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[3]The Bureau is a division of the Pennsylvania Department of Labor & Industry. See http://www.oa.state.pa.us/oac/lib/oac/Org_Charts/l&i.pdf (last visited Apr. 27, 2007).

-3-

claimed HUP owed to her.  She alleged in her complaint that Ms. Bogacki consistently refused to

allow her to take a lunchtime break, as well as other short daytime breaks, and that HUP

declined to compensate her for her work during these hours.

Though the evidence before the Court regarding Ms. Lignore's wage claims is sparse,[4]

the record shows that the Bureau responded to Ms. Lignore's claims by assigning a Labor

Investigator to the case, and by holding an "administrative conference" among the parties, to

"resolve" the dispute.  As a result of the conference, the Bureau "collected" a letter agreement,

executed and dated May 8, 2003 by HUP, and countersigned on May 19, 2003, by Ms. Lignore,

to settle the claims.  (Lignore Dep. 73:10-15.)

Under the terms of the agreement, HUP consented to pay $1329.86 to Ms. Lignore for

"overtime hours worked from July 1, 1999 to June 30, 2001," (Mot. for Partial Summ. J., Ex.

10), and in exchange for Ms. Lignore's consent to "close [the] claim," and release "any claims

[she] might have against the University for overtime pay, including but not limited to, any claims

under the Pennsylvania Wage and Hour Law, the Pennsylvania Wage Payment and Collection

Law, and the Fair Labor Standards Act."  Id.  By signing the letter, Ms. Lignore also

acknowledged that "apart from the overtime for which [HUP] agreed to pay . . . there [was] no

additional overtime or other wages that [she] worked without appropriate compensation.  Id.

The Court previously found that Ms. Lignore had executed a valid waiver of her right to

---

[4]The Court has attempted to facilitate Ms. Lignore's expression of her claims.  In
particular, although the Complaint makes no mention of wages, in an effort to afford the most
liberal construction to her pleadings, the Court previously recognized that she asserted and
notified HUP of her claims through various documents she attached to the Complaint, and in her
deposition testimony.  The Court issued an Order on March 2, 2007, by which it requested
clarification from Ms. Lignore as to the facts accompanying her wage claims.  (Docket No. 28.)
However, Ms. Lignore failed to respond to the Court's attempt to illicit information beyond her
own bare justifications of her claims.

sue for overtime wages under Pennsylvania law.  Lignore, 2006 WL 1804571, at *3 (quoting

Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 892 (3d Cir. 1975)).  Reasoning that

she could not seek the benefit of both the settlement, and the opportunity to continue to press the

claims she agreed to settle, the Court held that Ms. Lignore's subsequent dissatisfaction with the

compromise was not grounds for invalidating the freely agreed upon release of her claims.  Id.

(citing Kirby v. Dole, 736 F.2d 661, 664 (11th Cir. 1984).[5]

 Whether Congress intended for the availability of *purely* private compromises of

overtime compensation under the FLSA has been the subject of judicial debate.  In Brooklyn

Savings Bank v. O'Neil, 324 U.S. 697 (1945), a seminal case interpreting the FLSA, the

Supreme Court examined the legislative history of the Act and discussed the policy therein, "to

protect certain groups of the population from sub-standard wages and excessive hours which

endangered the national health and well-being," and to remedy the "unequal bargaining power

between employer and employee, in certain segments of the economy."  324 U.S. at 706-707.

Accordingly, the Supreme Court held in O'Neil that none of the rights to the basic wage,

overtime wage, or the right to liquidated damages could be waved under the Act.  Id. at 307.

 However, subsequent amendments to the FLSA, namely, the Portal-to-Portal Act of

---

 [5] As a threshold matter, based on unchallenged documentary evidence and supporting
caselaw, HUP has shown that there is no genuine issue concerning whether Ms. Lignore entered
into the release agreement.  In dismissing Ms. Lignore's state unpaid wage claim, the Court
found that the terms of the release demonstrated an intent to enter into a binding waiver of the
claim.  Lignore, 2006 WL 1804571, at *3 (citing Reed v. SmithKline Beckman Corp., 569 F.
Supp. 672, 674 (E.D. Pa. 1983)) (the "natural and ordinary meaning of the language of [a]
release demonstrates the intention of the parties and will prevail unless one of the parties
unequivocally proves that the release is invalid.").  The same is true for her federal claim.  An
important underlying fact germane to the disposition of the state-law wage claim and the
question of whether the release agreement bars recovery under the FLSA, is that the Bureau
supervised the formation of the release agreement.

1947, 29 U.S.C. § 253, and the Fair Labor Standards Amendments of 1949, 29 U.S.C. § 216(c),

opened the door to waiver of the rights granted under the law.  Specifically, in Martinez v. Bohls

Bearing Equip. Co., 361 F. Supp. 2d 608, 623-626 (W.D. Tex. 2005), the court painstakingly

surveyed the law among the circuits to determine under what circumstances FLSA claims may

be compromised.  While it remains unsettled whether the Portal-to-Portal Act was intended to

overrule O'Neil, and a companion case, D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S. Ct. 925,

90 L. Ed. 1114 (1946),[6] it is clear that settlements of bona fide unpaid wage claims that are

supervised by the Department of Labor are valid and enforceable.[7]  29 U.S.C. § 16(c).[8]  See also

---

[6]Compare United States v. Allegheny-Ludlum Indus. Inc., 517 F.2d 826, 861 (5th Cir. 1975) (the Portal-to Portal Act permits purely private compromises of FLSA claims); with Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-1353 (11th Cir. 1982) (Section 16(c) establishes the exclusive process for compromising FLSA claims); and Walton v. United Consumers Club, Inc., 786 F.2d 303 (7th Cir. 1986) (same).

[7]Though our court of appeals has not decided the issue, in Burke v. Wackenhut Corp., 2007 WL 694302, at *2 (M.D. Pa. Mar. 5, 2007), the court observed that "in dicta, the Third Circuit has indicated that [wage] disputes may be settled privately, without court approval." (citing Coventry v. United States Steel Corp., 856 F.2d 514, 521 n. 8 (3d Cir.1988) (observing that a release of an employee's rights under FLSA is invalid, but the release of a claim grounded in a factual dispute might not be precluded); Watkins v. Hudson Coal Co., 151 F.2d 311, 314 (3d Cir.1945) (private settlement of a dispute over the amount of wages due an employee "may, under proper circumstances, be upheld")).  Further, there is some suggestion in this district that even purely private settlements of FLSA claims may be permissible.  In Morris v. The Penn Mutual Life Ins. Company and the Indepro Group, 1989 U.S. Dist. LEXIS 1690, at *12-14 (E.D. Pa. Feb. 21, 1989), the court relied on the Sixth Circuit case, Runyan v. Nat'l Cash Register Corp., 787 F.2d 1039, 1044 (6th Cir. 1986), to find that purely private compromises under the FLSA are available where an employee is "not a member of that segment of the workforce needing protection from sub-standard wages and excessive hours."

[8]In relevant part, Section 16(c) states: "The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages."

Martinez, 361 F.Supp.2d at 626-631 (internal citations omitted).

      The facts of this case are covered by Section 16(c), and lead the Court to conclude that the release is permissible under the FLSA and bars Ms. Lignore from seeking further relief.  Ms. Lignore elected to pursue her wage claims by the process proscribed in the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S. § 209a(c), thus choosing to inform the Bureau of her claim, and causing it to initiate its administrative process of investigation and collection of unpaid wages.  The Bureau "set up a hearing," (Lignore Dep. 21:5-21:18), "collected" the release agreement, id. at 73:6-73:15, and provided Ms. Lignore with the settlement check, which she cashed.  Id. at 70:7-70:10.[9]   The Bureau's supervision of the formation of the release between Ms. Lignore and HUP foreshortened Ms. Lignore's right to receive full statutory overtime wages.  See Walton, 786 F.2d at 306 (as long as both the secretary of labor and the employee assent, federal supervision replaces private bargaining and extinguishes the right to full statutory overtime wages).[10]

      Furthermore, the Court concludes that the dispute between the parties inspiring Ms.

---

[9]Pursuant to 43 P.S. § 260.9a(e), after an individual requests the Bureau to investigate and pursue her unpaid wage claim, "[i]f the secretary determines that wages due have not been paid and that such unpaid wages constitute an enforceable claim," an individual may assign her claim to the secretary, who may bring any legal action necessary to collect such claim, or "settle and adjust any such claim to the same extent as might the assigning party."  By signing and submitting her wage complaint, Ms. Lignore agreed to assign her wage claim to the Bureau for the purposes of collection.

[10]The Bureau's process for handling wage complaints appears to parallel the process employed by the United States Department of Labor, which was explained by the court in Walton, 786 F.2d at 306: "[w]hen [the Department] thinks it has achieved 'enough' for the employees – something close to full payment of the wages and overtime due – it sends them agreements explicitly releasing the right to sue, and it requests them to sign these forms if they wish to take the money. When the Department thinks it has fallen far short, it does not solicit these signatures."

Lignore to file the wage complaint was bona fide.  In <u>Morris</u>, 1989 U.S. Dist. LEXIS 1690, at *12, the court described a bona fide dispute as one over "factual issues" not "legal issues such as the statute's coverage or applicability."  That a dispute must be bona fide ensures that a settlement is "more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching."  <u>Lynn's Food Stores, Inc. v. United States</u>, 679 F.2d 1350, 1354 (11th Cir. 1982).

While the record is sparse as to the details of Ms. Lignore's hourly rate of pay, the extent of overtime she claims to have worked, in total, and the precise calculation of the $1329.86 settlement figure, the record nevertheless reflects that HUP disputed whether Ms. Lignore worked some or all of the claimed hours of overtime.  The record also supports the conclusion that both Ms. Bogacki and HUP disputed the allegation that Ms. Bogacki forced Ms. Lignore to erase entries on her time cards.  (Lignore Dep. 74:13-21.)  Though the Court cannot quantify the disputed amount of unpaid wages, it is nevertheless a bona fide dispute as to the amount of compensation due.

Accordingly, because Ms. Lignore and HUP were in bona fide dispute over the amount and fact of whether she was owed overtime compensation, and because Ms. Lignore employed the administrative assistance of the Bureau in resolving her wage claims, they are of a type that may be compromised under the FLSA.  The Record shows that Ms. Lignore freely entered into the release agreement, in which HUP exchanged a monetary payment as consideration for Ms. Lignore's relinquishment of her right to sue and recover under the FLSA.  Thus, the Court finds there is no genuine issue of fact as to the enforceability of the waiver, and the Court will grant HUP's motion and enter summary judgment in favor of the Defendant of all remaining claims in

this case.

BY THE COURT:


  S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANCES LIGNORE,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HOSPITAL OF THE UNIVERSITY OF** | : | |
| **PENNSYLVANIA,** | : | |
| **Defendant.** | : | **NO. 04-5735** |

## <u>ORDER</u>

_____**AND NOW**, this 30th day of April 2007, upon consideration of Defendant's Motion for

Summary Judgment (Docket No. 25), and Plaintiff's Responses thereto (Docket Nos. 26, 27) **IT**

**IS HEREBY ORDERED** that the Motion (Docket No. 25) is **GRANTED** and summary

judgment is entered in favor of the Defendant.

The Clerk of the Court shall mark this case **CLOSED** for statistical, and all other

purposes.

BY THE COURT:


 S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE